UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME MENDELL HAILEY,

                Plaintiff,

v.

MICHAEL TROMBLEY and
GABRIEL NOBLE,

                Defendants.

_____/

Case No. 2:19-cv-10866

District Judge George Caram Steeh

Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 16)

**I.     RECOMMENDATION**:  The Court should **DENY** MDOC Defendants'

July 25, 2019 motion for summary judgment on the basis of exhaustion (ECF No.

16), because there exists a genuine dispute as to the material fact of whether

administrative remedies were available to Plaintiff.  Fed. R. Civ. P. 56(a), 42

U.S.C. § 1997e(a).

**II.    REPORT:**

    **A.     One of Hailey's prior lawsuits concerns the Richard A. Handlon Correctional Facility (MTU).**

    Jerome Mendell Hailey is currently in the Michigan Department of

Corrections' custody to serve sentences imposed on January 23, 2007 and/or

December 12, 2011.[1]  At this time, Hailey is incarcerated at the Michigan

Department of Corrections (MDOC) Earnest C. Brooks Correctional Facility

(LRF).  (ECF No. 18.)

Over the past few years, Hailey has filed several lawsuits in the Western

District of Michigan, at least one of which is mentioned within the matter currently

before this Court.[2]  Specifically, on December 4, 2017, while he was incarcerated

at the MDOC's Richard A. Handlon Correctional Facility (MTU), Hailey filed a

lawsuit against several individuals, many of whom were allegedly assigned to

MTU.  *Hailey v. Washington, et al.*, Case No. 1:17-cv-01067-JTN-SJB (W.D.

Mich.) (ECF No. 1.)  In January 2018, the action was dismissed with prejudice for

failure to state a claim, after which Hailey filed an appeal.  (*Id.* (ECF Nos. 7, 12.)

On July 12, 2018, the Sixth Circuit concluded that "Hailey did not sufficiently

allege a causal connection between his protected activity and the adverse action[,]"

but also that "it [wa]s appropriate to remand this case to the district court with

instructions to allow Hailey to amend his retaliation claims."  (*Id.*, ECF No. 17

[No. 18-1164].)

---

[1] *See* www.michigan.gov/corrections, "Offender Search," last visited Feb. 10, 2020.

[2] *See Hailey v. Washington, et al.*, Case No. 1:2017cv01067 (W.D. Mich.); *Hailey v. Blackman*, Case No. 1:2018cv00464 (W.D. Mich.); and, *Hailey v. Bruner*, Case No. 1:2019cv00224 (W.D. Mich.).

On August 14, 2018, while incarcerated at Carson City Correctional Facility (DRF), Hailey filed an amended complaint against Defendants Crawford and Smith, presumably of MTU.  (*Id*., ECF No. 21; *see also* ECF No. 29.)  On February 14, 2019, Crawford and Smith filed a *motion for summary judgment based solely on a failure to exhaust administrative remedies*, which the court has since *denied*.  (*Id*., ECF Nos. 34, 43, 46.)  It appears that the discovery deadline has passed and that dispositive motions are due by February 18, 2020.  (*Id*., ECF No. 47.)

**B.    Hailey's instant lawsuit concerns Macomb Correctional Facility (MRF).**

Hailey claims that, on December 13, 2018 ─ *i.e.*, after he filed the above-mentioned amended complaint ─ he was transferred from Level I at DRF to Level IV at Macomb Correctional Facility (MRF) for the Mental Health Residential Treatment Program (RTP).  (ECF No. 1, PageID.7 ¶ 1.)  While incarcerated at MRF, Hailey ("Plaintiff") filed the instant civil rights complaint against two MRF defendants ─ (Michael) Trombley and (Gabriel) Noble ─ concerning the events of January and February 2019.  (ECF No. 1, PageID.7-8 ¶¶ 3-9, 11.)  Plaintiff sues Defendants in their individual capacities, alleges violations of his First Amendment right to petition the Government for a redress of grievances, and seeks punitive, ancillary, and compensatory damages against each of the two defendants.  (ECF No. 1, PageID.2-3, 4 ¶ B, & 8 ¶¶ 10, 12.)

3

Plaintiff has since paid the filing fee, and the case was stayed from April 2019 to May 2019 for purposes of the *Pro Se* Prisoner Early Mediation Program. (ECF Nos. 5, 9.)  Once the case was excluded from the *Pro Se* Prisoner Early Mediation Program, the U.S. Marshal Service facilitated service of process.  (ECF Nos. 10, 12-13.)  On July 25, 2019, Defendants appeared via counsel, filed a demand for trial by jury, and filed their motion for summary judgment.  (*See* ECF Nos. 14-16.)

### C.    **MRF Defendants Trombley and Noble contend that Plaintiff has failed to exhaust under 42 U.S.C. § 1997e(a).**

Judge Steeh has referred this case to me for pretrial proceedings.[3]  Currently before the Court is Defendants Trombley and Noble's joint, July 25, 2019 motion for summary judgment on the basis of exhaustion, which argues that Plaintiff has not complied with 42 U.S.C. § 1997e(a) as to his claims against them.  (ECF No. 16.)

Plaintiff filed a timely response on August 5, 2019.  (ECF No. 17.)  The deadline for filing a reply brief under E.D. Mich. LR 7.1 expired some time ago; therefore, this motion is now ready for decision.

### D.    **Fed. R. Civ. P. 56 ("Summary Judgment")**

---

[3] Although the case was originally referred to Magistrate Judge Majzoub, who has since retired, the case was reassigned on November 4, 2019 and referred to the Undersigned on November 7, 2019.  (ECF Nos. 11, 19.)

Defendants bring their motion pursuant to Fed. R. Civ. P. 56. (ECF No. 16, PageID.52, 58.) Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp.*

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words,

summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ."  *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### E.    Discussion

#### 1.    Plaintiff's complaint describes the alleged events of January 23, 2019 – February 6, 2019 at MRF.

The facts underlying Plaintiff's claims are set forth in twelve paragraphs.

(ECF No. 1, PageID.7-8; *see also id*. at 18-19, 20-21.)  Plaintiff claims that, on the

afternoon of January 23, 2019, Trombley asked him, "Hailey[,] why [do] you get

called out for legal mail so much?"  (*Id*., PageID. 7 ¶ 3.)  Plaintiff replied, "I am

litigating, why?"  (*Id*.)  Trombley allegedly responded, "I hate [expletive]

litigators!"  (*Id*.)  Then, around 5:00 p.m., Trombley, Noble and two other officials

came to Plaintiff's cell and "demanded plaintiff Hailey and his cellmate to cuff up

for a strip search."  (*Id*. ¶ 4.)  According to Plaintiff:

> While escorting plaintiff to be strip search[ed][,] defendant Trombley
> then stated[,] "we know how to stop [expletive] like you!"  [P]laintiff
> inquired[,] "stop me from what?"  [D]efendant Trombley then
> stated[,] "litigations stupid [expletive]!"  [D]efendant Noble then
> stated[,] "we know where the kni[fe] is, you've been framed!".
> Defendant Trombley then went into plaintiff's cell and one (1) minute
> later defendant Trombley returned with defendant Noble and stated[,]
> "I found your kni[fe]!"  [D]efendant Noble then stated[,] "stop
> litigating Mr. Hailey, you wouldn't be having these problems".

6

Plaintiff Hailey was then placed in the hole (segregation)[,] [p]ending a class one (1) misconduct.

(*Id.*)[4]  Around 9:30 p.m., Defendant Trombley brought Plaintiff his personal property, at which time Plaintiff asked, "where is my legal mail?"  Defendant Trombley responded, "Really![]  [Y]ou [are] going to ask for that?"  (*Id.* ¶ 5.)

Plaintiff asked for his legal mail, and, on the morning of January 24, 2019, ARUS Harriston (Ronald Phlegm-Hairston) said, "we [are] going to give you all your legal mail".  (*Id.*, ¶ 6.)  Around 1:30 p.m., CO McGrown brought Plaintiff his duffel bag, but there were "no legal mail items . . . [,]" even though "[D]efendant Trombley supposedly packed [it] on January 23, 2019."  (*Id.*)

Plaintiff claims he was found guilty of a Class I misconduct (presumably the aforementioned citation) on February 5, 2019, and, on February 6, 2019, his security level was waived to a Level IV.  (ECF No. 1, PageID.7-8 ¶¶ 4, 11.)  (*See also* ECF No. 1, PageID.9 ¶ V [Injuries].)

### 2.    Plaintiff acknowledges that he did not file a grievance regarding the instant action.

Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

---

[4] Under the MDOC's Prisoner Discipline Policy Directive, Class I misconducts include "Possession of Weapon," common examples of which include: "Possession of a prison-made knife, club, or any item fashioned or intended as a weapon; possession of a rock."  MDOC PD 03.03.105A (effective July 1, 2018).

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).

The MDOC's prisoner/parolee grievance procedure has three steps.  MDOC PD 03.02.130 ¶¶ V-GG (effective July 9, 2007) (ECF No. 16-2).  "Complaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." (*Id.*, ¶ B.)

Defendants argue that Plaintiff "has failed to exhaust his grievances against any defendants."  (ECF No. 16, PageID., 4, 59-65.)  In support of their motion, Defendants provide an MDOC Prisoner Step III Grievance Report and Department Analyst Carolyn Nelson's affidavit, which explains that, "as of April 17, 2019, Hailey had not pursued any grievances arising out of Macomb Correctional Facility (MRF) to Step III."  (ECF No. 16-3, PageID.78-81.)  Put another way, the report reflects that, from January 1, 2013 to April 17, 2019, all of Plaintiff's Step III grievances were attributable to either MTU or DRF.  (*Id.*)

Plaintiff concedes that he did not file a grievance concerning the facts related to, or about the facts described in, this complaint.  (ECF No. 1, PageID.11 ¶ D.)

8

### 3.      However, Plaintiff contends the administrative remedies were *not available* to him.

In his complaint, Plaintiff describes several attempts to secure Step I

grievance forms, none of which was fruitful:

- On January 24, 2019, plaintiff Hailey asked the CO for a grievance and he replied[,] "there is none".

- On January 25, 2019, plaintiff Hailey asked Arus Harriston[] and Rum Williams for a step one (1) grievance[,] and they both stated[,] "there is no grievances in the unit[.]" [W]hen plaintiff Hailey ask[ed][,] "can you call another unit for a few grievances?" Arus Harriston stated "I [am not] going through all that for a grievance Mr. Hailey". Rum Williams stated[,] "that's too much work for some grievances".

- On February 1, 2019, Plaintiff Hailey asked first and second shift officers for step one (1) grievances[,] and they stated[,] "none is in the unit[.]" [P]laintiff then asked them[,] "can you call and get some from another unit?" Officers refuse[d] to call other units for some grievances.

(ECF No. 1, PageID.8 ¶¶ 7-9; *see also* ECF No. 1, PageID.12 ¶ F(2).) While

Plaintiff admits that he did not file a grievance regarding the facts related to or the

events described in this complaint, Plaintiff explains:

> Arus Harriston, CO Mills, and RUM Williams stated[,] "There is no grievances in the Unit." The Unit was out of grievances for 4 ½ weeks. When plaintiff asked these officials to call another unit for some grievances[,] they all stated[,] "That's doing too much for some grievances[.]"

(ECF No. 1, PageID.11-12 ¶¶ D, F(1).)

Case 2:19-cv-10866-GCS-APP   ECF No. 20, PageID.117   Filed 02/18/20   Page 10 of 16

Here, it is important to note that the allegations within Plaintiff's complaint serve as attestations.  In addition to the form complaint's Fed. R. Civ. P. 11 certification, Plaintiff's complaint is signed "under the penalty of perjury that the events in this declaration [are] correct and true[,]" and is immediately thereafter dated and signed by Plaintiff.  (*Id*., PageID.8, 15, 19, 21.)  This substantially complies with 28 U.S.C. § 1746, the statute governing "Unsworn declarations under penalty of perjury."  Where a Plaintiff has filed a properly verified complaint, "his allegations 'have the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment."  *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992)).

### 4. Plaintiff's February, March & April 2019 MRF Step 1 and Step 2 Grievances do not prove that the grievance process was available to Plaintiff on January 24th, January 25th or February 1st.

As noted above, Plaintiff's complaint begins by mentioning his December 2017 case and his December 2018 arrival at MRF.  (ECF No. 1, PageID.7 ¶¶ 1-2.) However, *Plaintiff's claims against Defendants Trombley and Noble stem from their alleged, January 23, 2019 actions*.  (*Id*., PageID.7-8 ¶¶ 3-6, 10, 12.)  This is so, even though Plaintiff's complaint discusses what happened in the wake of their actions.  (ECF No. 1, PageID.8, ¶¶ 4, 6, 7-9, 11.)

10

As for Plaintiff's claims that he tried to secure grievance forms several times between January 24th and February 1st (*see e.g.*, ECF No. 1, PageID.8 ¶¶ 7-9), Defendants provide an affidavit and report, which shows that, from February into April 2019, Plaintiff submitted several MRF Step I grievances:

- **MRF-19-02-0212-27z** (against non-parties Churchill and Amalfitano for an alleged retaliatory class 2 misconduct ticket);

- **MRF-19-02-0213-27b** (against non-parties Churchill and Amalfitano for their actions following a strip search);

- **MRF-19-03-0287-28e** (against non-parties Kinner and Greason, as well as "those who are involved," for placing Plaintiff in Level 4 and screening him for transfer on February 6, 2019); and,

- **MRF-19-04-0455-28e** (against RUM Williams and "whomever else is involved," regarding law library access).

(ECF No. 16-4, PageID.83-94.)  MRF-0212 and MRF-0213 were pursued to Step 2.  (ECF No. 16-4, PageID.85, 88, 90.)[5]

---

[5] True, some of these grievances mention Williams, one of the MDOC employees from whom Plaintiff allegedly sought a grievance form(s).  However, while the preliminary portion of MRF-0287 explains that Plaintiff spoke to RUM Williams in an attempt to resolve the issue, Williams does not otherwise appear to be a subject of this grievance.  (ECF No. 16-4, PageID.91.)  Moreover, even if the February 6, 2019 screening for transfer to Level 4, which was discussed in MRF-0287, is the same as the February 6, 2019 waiver of security level to Level 4, which is mentioned in the instant complaint, Plaintiff's instant case is against Trombley and Noble, not Kinner, Greason, and those who are involved . . . " for alleged violations of Plaintiff's First Amendment right "to petition the Government for a redress of grievances."  (ECF No. 1, PageID.8 ¶¶ 10-11.)  Also, while MRF-0455 is a grievance against RUM Williams, the subject is law library access for legal research on pending litigation, which is different from the issue currently at

11

Yet, even if these four grievances establish that Plaintiff had access to the grievance process "around the time where the incidents in the complaint occurred," (ECF No. 16, PageID.57), the first two of these grievances were dated February 7th and received at Step I on February 20th, while the third and fourth grievances were dated February 24th and March 27th and received at Step I on March 7, 2019 and April 11, 2019, respectively.  (ECF No. 16-4, PageID.85, 86, 89, 91, 93.)  In other words, the earliest of these grievances was dated February 7, 2019, a date several days after the January 24th - February 1st attempts described in the instant complaint.  (ECF No. 1, PageID.8 ¶¶ 7-9.)  Moreover, the policy requires that grievants "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration[,]" and submit the Step I grievance form "[w]ithin five business days after attempting to resolve a grievable issue with staff[.]"  (MDOC PD 03.02.130 ¶¶ P, V; ECF No. 16-2, PageID.72-73.)  Thus, for January 23 or January 24, 2019 events, this seven day period would seemingly have expired on January 30 or 31, 2019.   Furthermore, albeit in his unverified response, Plaintiff makes the point that he was "in

_____

bar, i.e., the January 2019 events (strip search, misconduct ticket and/or missing legal mail) that are the subject of the instant complaint.  (*Compare* ECF No. 1, PageID.7-8, *with* ECF No. 16-4, PageID.93.)

segregation and staff was responsible to assure plaintiff received stationary papers including grievance forms." (ECF No. 17, PageID.101 ¶ 1.)

To be sure, as Defendants point out, "administrative law creates an incentive for . . . parties to do what they would otherwise prefer not to do, namely, to give the agency . . . [,]" in this case the MDOC, "a fair and full opportunity to adjudicate [Plaintiff's] claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). (ECF No. 16, PageID.65.) "Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (quotation and citation omitted).

However, Plaintiff's reply aptly points to the United States Supreme Court's decision in *Ross v. Blake*, 136 S.Ct. 1850 (2016). (ECF No. 17.) Among other things, the Supreme Court explained that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S.Ct. at 1859. Moreover, the opinion describes "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief[,]" one of which is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-1860. Plaintiff's verified complaint makes colorable assertions, including dates and individuals (identified by title or

name), concerning his unsuccessful attempts to secure a Step I grievance form in the days immediately following the January 23, 2019 events at issue in this case. Here, Plaintiff describes and declares how he was "thwarted" from "taking advantage of the grievance process" through both *machination* and/or *intimidation*. *Id*. This creates a question of fact as to whether his access to the grievance process was denied, thus providing him with a possible excuse for failing to comply with its requirements. It will be for the trier of fact to determine whether his administrative remedies were "available."

Nor is the exhaustion question answered by the other affidavits Defendants attach in support of their motion. For example, MRF Grievance Coordinator Eutrilla Taylor attests that she has "no reason to believe that Hailey was prevented from pursuing a grievance regarding the allegations in his complaint[,]" and that "[a]t no point did I prevent Hailey from filing a grievance." (ECF No. 16-4, PageID.83-84 ¶¶ 6-7.) Moreover, Ronald Phlegm-Hairston (presumably ARUS Harriston) and Michelle Williams-Ward, presumably Defendant Williams, each attest:

- At no point did I inform Hailey that "there is no grievances in the unit"; if Hailey had requested a grievance, I would have provided him with a grievance pursuant to the MDOC grievance procedure. At no point did I ever make any threatening remarks to Hailey.

- At no point did I prevent Hailey from filing a grievance.

(ECF No. 16-5, PageID.96-97 ¶¶ 5-6; ECF No. 16-6, PageID.99-100 ¶¶ 5-6.)  Still, these attestations by Taylor, Phlegm-Hairston and Williams-Ward only <u>create</u>, *i.e.*, <u>do not disprove</u>, a genuine dispute as to a material fact.  The trier of fact will have to determine just who is to be believed on this issue, regardless of how many witnesses there are on one side or the other.  *See* 3 Fed. Jury Prac. & Instr. § 104.54 ("Number of witnesses") (6th ed.); *see also United States v. Moss*, 756 F.2d 329, 334 (4th Cir. 1985) ("The weight of the evidence is not necessarily to be determined by the number of witnesses testifying to the existence or nonexistence of any fact.")

## F.    Conclusion

Defendants are not entitled to summary judgment in their favor on the basis of exhaustion, because they have not shown the absence of a "genuine dispute" as to the material fact of whether administrative remedies were available to Plaintiff. Fed. R. Civ. P. 56(a), 42 U.S.C. § 1997e(a).  Therefore, it cannot be said that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  Accordingly, the Court should **DENY** Defendants' motion for summary judgment.  (ECF No. 16.)

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Anthony P. Patti

Dated: February 18, 2020          UNITED STATES MAGISTRATE JUDGE

16